**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**


STATE OF DELAWARE,       )
                         )
          Plaintiff,     )
                         )
                         )
     v.                 )      Cr. ID. No. 89000046DI
                         )
                         )
MICHAEL A. FELICIANO,     )
                         )
          Defendant.    )


Decided: January 15, 2015
(Corrected April 30, 2015)


**COMMISSIONER'S REPORT AND RECOMMENDATION THAT**

**DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF**
**SHOULD BE DENIED.**
**AND**
**RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED**


Delaware Department of Justice, 820 N. French St. 7th Floor, Department of Justice, Wilmington, Delaware, 19801.

Andrew J. Witherell, Esquire, 100 E. 14th Street, Wilmington , Delaware 19801, Attorney for Defendant.



MANNING, Commissioner

This 15th day of January, 2015, upon consideration of Defendant's Motion for Postconviction Relief, the Court finds the following:

## FACTS

According to the Affidavit of Probable Cause, Michael A. Feliciano ("Defendant") and his brother, Mark, lived with their parents at 6 Farnsworth Drive in Newark, Delaware. At the time of the offense in December of 1988, their mother ran an unlicensed in-home daycare at that address. On December 23, 1988, the first victim, a three year old girl, spent the day at the daycare and was picked-up by her mother at approximately 5:20 p.m. and taken home. Once home, the girl complained of pain when she went to the bathroom and her mother noticed that her vagina was bleeding. The girl was taken to a hospital were a doctor examined her and advised that there had been some type of intrusion into the girl's vagina and that there was evidence of tearing and contusions as well. Upon interview by the police, the girl recounted how "Mike" told her that they were going to play a game. She advised that Mike told her if she took her pants off he would give her a lollipop. After she took her pants off, Mike got on top of her and "hurt her." When asked where Mike "hurt her" the girl pointed to her vagina. Police subsequently located a shirt that Defendant indicated belonged to him that had two small blood stains on the front shirt tail. Police showed the girl pictures of Defendant and his brother Mark. The girl identified "Mike" as the one who hurt her and pointed to the picture of Defendant.

On December 31, 1988, a mother who had been using the same daycare for over a year took her seven year old daughter to the hospital because she suspected that she had been sexually assaulted. Police responded to the hospital and interviewed this second

1

victim. This second girl recounted to police, in detail, how Mark Feliciano had sexually assaulted her on the night of December 22, 1988, when she had spent the night. She detailed how Mark had put his penis into her vagina and moved up and down and that it was very painful. She stated that this had happened to her several times while she stayed at the house and that Defendant had also done this to her on several occasions. The second victim was unsure of the exact dates; however, her mother advised police that she had been taking her daughter to the daycare since November of 1987.

## PROCEDURAL HISTORY

Defendant was indicted on February 4, 1989, for three counts of Unlawful Sexual Intercourse First Degree. On September 5, 1989, Defendant pled guilty to one amended count of Unlawful Sexual Intercourse Second Degree. The remaining counts of the indictment against Defendant were dropped in exchange. Defendant was represented by counsel and was sentenced immediately to the statutorily mandated sentence of Life in prison[1]. Defendant did not appeal his conviction to the Delaware Supreme Court. In June of 2001, and again in 2007, Defendant sought relief with the Board or Parole, however, his requests were denied.

Defendant filed a *pro se* Motion for Postconviction Relief ("Motion") on July 11, 2013, pursuant to Superior Court Rule 61.[2] The Court subsequently appointed Defendant counsel ("Rule 61 Counsel") for his *pro se* Rule 61 Motion. On August 4, 2014, Rule 61 Counsel filed a Non-Merit Brief and Motion to Withdraw as Counsel under Rule

---

[1] In 1989 a Life sentence included the possibility of parole after serving 45 years at Level Five.
[2] It appears that Defendant may have filed a Rule 61 Motion on October 16, 1989, but it was rejected as Non-Compliant by the Court the next day. There is no evidence in the docket that Defendant subsequently re-filed his Motion until 2013.

2

61(e)(2).  The State filed a Response on December 18, 2014.[3]  As of this date, Defendant has not filed a Reply to the State's Reply Brief.

## DEFENDANT'S RULE 61 MOTION

Defendant's claims for relief, in his own words, can be summarized as follows:

(1) Trial Counsel was ineffective for failing to suppress pre-trial statements made to police,

(2) Trial Counsel failed to properly investigate Defendant's story,

(3) Trial Counsel failed to adequately communicate with Defendant prior to the guilty plea,

(4) Trial Counsel failed to make any effort to investigate or produce mitigating information about Defendant's background,

(5) Trial Counsel failed to locate and interview any of Defendant's witnesses,

All of Defendant's arguments are procedurally barred and without merit.[4] Each will be address below.

## LEGAL STANDARD

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that:  (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[5] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires the defendant to show that there is a reasonable probability

---

[3] Trial Counsel, Edmund M. Hillis, unfortunately, passed away on December 24, 2013.
[4] Defendant's Motion is evaluated under Rule 61 as it existed on the date the Motion was originally filed.
[5] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[6]

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[7]

Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[8] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[9]

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that defense counsel's conduct fell within a wide range of reasonable professional assistance.[10] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[11]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from the defense counsel's perspective at the time decisions were being made.[12] It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[13] A fair assessment of attorney performance requires that

---

[6] *Id.*
[7] *Id.* at 697.
[8] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[9] *Strickland*, 466 U.S.at 691.
[10] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008).
[11] *Strickland at* 466 U.S. 688-689.
[12] *Id.*
[13] *Id*

4

every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided. [14]

The United States Supreme Court recognized that there are countless ways to provide effective assistance in any given case. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, trial counsel observed the relevant proceedings, knew of materials outside the record, and interacted with his client, opposing counsel, and the judge.[15]

Even the best criminal defense attorneys would not defend a particular client in the same way. Consequently, defense counsel must be given wide latitude in making tactical decisions.[16] Counsel's representation must be judged by the most deferential of standards. There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[17]

## PROCEDURAL BARS

Defendant's claims are time-barred under Superior Court Rule 61(i)(1) because his Motion was not filed within one year of the date the conviction became final.[18] Additionally, Defendant has not argued, nor established, that this Court lacked jurisdiction or that there is a colorable claim that a miscarriage of justice occurred because of constitutional violation, as required for relief under Rule 61(i)(5). Notwithstanding these procedural bars, Defendant's claims are without merit as discussed below.

---

[14] *Id.*
[15] *Harrington v. Richter,* 131 S.Ct. 770, 787- 88 (2011).
[16] *Id.*
[17] *Strickland,* 466 U.S. at 689; *Harrington v. Richter*, 131 S.Ct. 770 (2011).
[18] Superior Court Rule 61(i)(1): Time Limitation. A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

5

## **GROUND ONE**

Defendant's first claim is that Trial Counsel was ineffective for failing to move to suppress statements made by him to police.[19]

A review of the Court's docket and file reveals that indeed no suppression motion was filed by Trial Counsel. It is unclear what specific statements Defendant made to police that Trial Counsel *could* have moved to suppress; however, there appears to be two possibilities.

First, the Affidavit of Probable Cause, as previously noted, indicates that Defendant, at some point in time, made a statement to police identifying a shirt that had what appeared to be two drops of dried blood on it, as belonging to him. No DNA or other forensic testing appears to have been conducted on the suspected blood drops. Thus, the relevance, and in turn the admissibility *at trial*, of this shirt is unknown. Assuming that the blood on the shirt *could have been* scientifically linked to one of the victims, it would have been damning evidence for the State. However, as Defendant entered into a guilty plea prior to trial, the record on this point was never fully developed and the shirt's admissibility never litigated.

Second, in Defendant's Motion he admits to making statements to police during a lengthy interview, exactly what he said, however, is unknown at this time. During his interrogation, Defendant claims that he invoked his right to counsel, yet the police ignored his request and continued to press him until he confessed. Defendant states that

---

[19] At the outset, it is worth noting that Defendant waited over 24 years to file this Motion. While the Court's file and record is complete and intact, a full and complete picture of the litigation cannot be established as Trial Counsel passed away during the extended delay. Thus, information known only to Trial Counsel, such as strategy or conversations with opposing counsel that may not have been reduced to writing, is unknown to the Court and lost forever.

6

"[he] never denied being the one at the house partying and drinking, but denied raping any one." Defendant argues that any statement he did make is "tainted" and presumably, subject to suppression. In his Motion, Defendant never elaborates on what the police claim he said, but from the gist of his argument the Court can fairly assume that Defendant ultimately made incriminating statements during the interrogation. For the sake of completeness and fairness to Defendant, the Court will assume that these are the two statements Trial Counsel failed to suppress.

Not only are Defendant's claims time barred as previously noted, but this claim is also procedurally barred under Rule 61(i)(3) because it was not asserted in the proceedings leading to the judgment of conviction. Defendant does not present or argue any cause for relief from the procedural default under Rule 61(i)(3)(A). Nevertheless, the Court will examine the issue of prejudice under Rule 61(i)(3)(B).

First, is it almost impossible for the Court to know, today, if such a suppression motion stood any reasonable chance of success. Defendant's Motion is little more that a bare assertion of uncorroborated statements and conclusions. For this Court to hold that Trial Counsel was ineffective, Defendant would have to prove a reasonable probability of success on the merits of each suppression motion, and in turn, a reasonable probability that the outcome of the case would have been different.[20] Even if Defendant's statements were suppressed, the State would still be in a position to present other testimonial and physical evidence. Such other evidence would undoubtedly include the fact that one of the victims was bleeding, and the shirt itself, possibly with the alleged victim's blood on

---

[20] *See Williams v. State*, 12 A.3d 1155 (Table) (Del. 2011), 2011 WL 252948,*2, (Requiring a defendant in the context of a Rule 61 motion to prove a reasonable probability of success on a motion to suppress to prove prejudice from counsel's deficient performance).

it. Moreover, the blood evidence was located in what could, *at best,* be characterized as an unusual location, but also one at least consistent with where blood might be found following the physical acts as described by one of the victims.

As such, Defendant cannot meet his burden based on these facts, and therefore, cannot establish the requisite prejudice under Rule 61(i)(3)(B) to overcome the issue of procedural default. Even if this claim had been raised in a timely fashion, the Court is not persuaded, based on the facts presented, that Trial Counsel was ineffective for failing to move to suppress the statements at issue.

### GROUND TWO

Defendant argues that Trial Counsel was ineffective because he failed to "properly investigate [Defendant's] (story)."

It is unclear what "story" Defendant is referring to. In his Motion, Defendant suggests the following factual scenario regarding the incident in question: "I was at a part[y] when we were all drinking and doing a lot of drugs. Everyone was having a good time and a girl came up to me and one thing led to another." Defendant also states that "God brought him" to prison and this has allowed him to "think and focus about where I went wrong in my life by going down the wrong path."

Setting aside the fact that Defendant's "story" is, to a certain extent, a tacit admission of guilt, it is impossible for the Court to reconcile this statement with the facts as set forth in the Affidavit of Probable Cause. Defendant's claim appears to be nothing more than a conclusory allegation unsupported by facts or argument.[21] Even if Trial

---

[21] Conclusory allegations are insufficient to establish a claim of ineffective assistance of counsel. *Younger v. State*, 580 A.2d 552, 555 (Del.1990).

8

Counsel had followed-up on this information, it is unclear how Trial Counsel could have used it to change the outcome of the case. As such, Defendant's claim is both time barred and meritless.

**GROUND THREE**

Defendant's third claim is that Trial Counsel "failed to effectively communicate with [him] prior to pre-trial, failed to keep him apprised, of the status of the case, and never, visited [him] at J.T.V.C.C. and did not answer [his] letters of inquiring and the like."

Due to the passing of Trial Counsel it is unknown what he would have to say in response to these allegations. However, the transcript of the guilty plea and sentencing colloquy paints a different picture.

Trial Counsel advised the Court that he discussed the plea with the defendant on the morning of the plea, and "consulting [Defendant] on three separate occasions." Trial Counsel also stated that he "did meet at [his] office with both [the defendant's] wife and mother on occasions too numerous for me to count now."[22] Finally, Trial Counsel represented to the Court the following:

> My discussions in the past with Mr. Feliciano included the discussion of the evidence the State would present, as I was aware pursuant to the Discovery rules, including statements made and provided to the State of Delaware. I discussed the evidence that would be brought if the matter proceeded to trial. I shared with him my opinion based on my experience as to what I thought about our defense if he went to trial, as I am aware based on discussion with him, and what I thought about the State's case. It's based on this background, based on discussion with Mr. Feliciano, that he is prepares to offer the Court the guilty plea as indicated in

---

[22] Undoubtedly hyperbole; but the point is made that Trial Counsel had discussed the case with Defendant's family a number of times, apparently in person.

the guilty plea agreement.[23]

The transcript reveals that Defendant voiced no objection to anything Trial Counsel said to the Court at that time, and then proceeded to enter his guilty plea. In the absence of evidence otherwise, Defendant is bound by his answers on the guilty plea form and his answers to the Court during the colloquy.[24]

Again, Defendant's claim is nothing more than a conclusory allegation unsupported by facts or argument as to how Trial Counsel's alleged deficient performance prejudiced him and changed the outcome of the case. As such, Defendant's claim is both time barred and meritless.

## **GROUND FOUR**

Defendant next claims that Trial Counsel "failed to make any effort to produce / investigate mitigating information about [his] background."

Due to the passing of Trial Counsel and the retirement of the prosecutor who handled the case, the record is silent as to what, if any, mitigating evidence was discussed *prior* to entry of the plea. However, once Defendant accepted the State's plea offer, the issue of mitigation became moot. The Court sentenced Defendant to the only possible sentence—life in prison with the possibility of parole. No amount of mitigation presented to the Court could have reduced the sentence; the judge simply had no discretion. Defendant's claim is conclusory, time-barred and meritless due to the mandatory sentence he received.

---

[23] Guilty plea Transcript at 3–5.
[24] *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) (citations omitted).

10

## GROUND FIVE

Finally, Defendant claims that Trial Counsel "failed to investigate locate and speak with any of the witnesses, particularly these two (2) witnesses that could have / who were present during the 12-31-88 situation."[25]

Presumably, Defendant is claiming that he wanted Trial Counsel to interview two witnesses who would exculpate him of the crimes charged and that Trial Counsel failed to do this, prejudicing his case. The first problem with Defendant's argument is that he fails to actually identify who these witnesses were, or elaborate on what they would have testified to. The second, and perhaps bigger problem, is that Defendant concedes that "pre-trial counsel may not have realized, prior to pre-trial that two witness [sic] could have helped [him] encounter of the events. I assuming counsel was aware that there were two witnesses that back-up [my] story. . . ."

Lacking concrete evidence of the existence of two witnesses who actually could have exculpated Defendant, the Court finds Defendant's claim specious at best. Trial Counsel can hardly be found deficient for failing to interview, much less call as witnesses at trial, people there is no clear evidence he even knew existed. As such, Defendant's claim is both time barred and meritless.

---

[25] On page 4 of Defendant's Motion he states that he "had two (2) witnesses that could have testified about his testimony of the event on 9/5/1989 which [he] requested counsel to have them testify." The Court will assume that Defendant is referencing one or both of the indicted incidents.

For all of the foregoing reasons, Defendant's Motion should be DENIED and

Rule 61 Counsel's Motion to Withdraw should be GRANTED.

**IT IS SO RECOMMENDED.**

/s/ <em>Bradley V. Manning</em><br>
BRADLEY V. MANNING,<br>
Commissioner

oc:    Prothonotary
cc:    Defendant